UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Sirti Limited Corp.

Plaintiff,

v.

The Travelers Indemnity of America, et al.,

Defendants.

Civil No. 01-587 JMR/FLN

**REPORT AND RECOMMENDATION**

---

Stephen A. Melcher, for Plaintiff.
Daniel A. Haws, and Carol L. Casey, for Defendants.

---

**THIS MATTER** came for a hearing before the undersigned United States Magistrate Judge on April 18, 2003, on: (1) Plaintiff's Motion for Partial Summary Judgment [#33]; and (2) Defendant's Cross Motion for Summary Judgment/ Declaratory Judgment [#36/ 42]. This matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons which follow, this Court recommends that: (1) Plaintiff's Motion for Partial Summary Judgment [#33] be Granted; and (2) Defendant's Cross Motion for Summary Judgment/ Declaratory Judgment [##'s 36, 42] be Denied.

## I. FACTUAL BACKGROUND

This is an insurance coverage dispute which arises from a natural gas explosion in St. Cloud, Minnesota, on December 11, 1998. Plaintiff contends that Defendants owe it a duty to defend it in several lawsuits which have been filed against it in connection with the explosion. Defendants deny there is any insurance coverage for the events giving rise to the underlying lawsuits.

The Plaintiff, Sirti Limited Corporation ("Sirti"), contracted with Seren Innovations

FILED AUG 0 7 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENT'D
DEPUTY CLERK

Incorporated ("Seren"), to participate in a cable installation project in St. Cloud, Minnesota ("the project"). The services Sirti provided were memorialized in two separate contracts. In a March, 1998, agreement Sirti contracted to serve as the designer for the project. Separately, in July, 1998, Sirti agreed to provide "construction management" services.

While Cable Constructors, Inc. ("CCI"), one of the other contractors on the project, was installing anchors for guy wires, it struck a gas line which led to the explosion. Four people died in the explosion and many properties were destroyed or damaged. To date 24 lawsuits alleging wrongful death, personal injury, and property damage have been filed as a result of the explosion. In addition the Defendants in the underlying litigation, Seren, CCI, Northern States Power Co. ("NSP") and Sirti, have made claims against each other for contribution and indemnity.

At the time of the explosion, Sirti had three liability insurance policies: 1) a professional liability insurance policy issued by Evanston Insurance Company[1]; 2) a commercial general liability policy ("CGL") issued by Travelers Indemnity of America and Travelers Indemnity Company of Illinois ("Travelers"); and 3) an excess liability policy ("umbrella") also issued by Travelers. Two weeks following the accident, Sirti provided written notice to Travelers of potential claims arising out of the explosion. In a February 1999 letter denying a duty to defend, Travelers explained that:

> Sirti contracted with Seren to provide *design and engineering services* for the cable installation project. We also understand that Sirti did not have employees on site at the time of the drilling which led to the explosion.
>
> ....Both policies contain endorsements that exclude coverage for "bodily injury" and "property damage" arising out of *professional services* performed by Sirti. ....Since Sirti's involvement in this case was as a provider of *professional services*, there would not be coverage for damage claims arising out of the explosion.

[1] This Evanston policy is not at issue in the instant case.

(Letter from Travelers to Sirti dated February 16, 1999, at 1.)

Plaintiff initiated the instant lawsuit to resolve this insurance coverage dispute, and by its motion for partial summary judgment, seeks only a judicial determination that the Defendants owe it a duty to defend in the underlying lawsuits. Plaintiff is content to leave for another day the issues of whether Defendants must indemnify it for any damage awards which might be entered in those suits, and whether Defendant is liable for Plaintiff's attorney fees in the instant action. Defendant seeks a determination that there is simply no coverage under either policy. Defendants contend that the professional services exclusion in each policy of insurance relieves it of both the duty to defend as well as the duty to indemnify Plaintiff in connection with the December 11, 1998, explosion.

## II. CONCLUSIONS OF LAW

### A. STANDARD OF REVIEW

The Supreme Court has held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses that are either factually unsupported or based on undisputed facts. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986); Hegg v. U.S., 817 F.2d 1328, 1331 (8th Cir. 1987); Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 919 (8th Cir. 2000). Federal Rule of Civil Procedure 56(c) provides, in relevant part, that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986) (holding that the Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of

law"). When considering a motion for summary judgment, a court should construe all evidence in favor of the non-moving party. See Anderson, 477 U.S. at 255. However, if the evidence submitted by the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 249-50.

The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. Id. at 248-49. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48. The test for whether there is a genuine issue of material fact is two-fold. First, the materiality of a fact is determined from the substantive law governing the claim. Only disputes over facts that might affect the outcome of the suit are relevant on summary judgment. Liberty Lobby, 477 U.S. at 252; Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc., 824 F.2d 582, 585 (8th Cir. 1987), cert. denied, 484 U.S. 1010 (1988). Second, any dispute of material fact must be "genuine." A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. Liberty Lobby, 477 U.S. at 252. If the opposing party fails to carry that burden, summary judgment should be granted. See Celotex, 477 U.S. at 322; Bassett v. City of Minneapolis, 211 F.3d 1097, 1099 (8th Cir. 2000).

Interpretation of the language of an insurance contract is a question of law. Iowa Kemper Ins. Co. v. Stone, 269 N.W.2d 885, 887 (Minn. 1978). Interpretation and construction of an insurance contract may be decided on summary judgment. Cellex Biosciences, 537 N.W.2d 621, 622 (Minn. Ct. App. 1995).

**B. DEFENDANTS HAVE A DUTY TO DEFEND PLAINTIFF**

Because this is a diversity case, we look to Minnesota state law when interpreting the provisions of the insurance policy. See Bates v. Security Benefit Life Ins. Co., 146 F.3d 600, 603 (8th Cir.1998). "Exclusions in insurance contracts are read narrowly against the insurer." Atwater Creamery Co. v. W. Nat'l. Mut. Ins. Co., 366 N.W.2d 271, 276 (Minn.1985). Defendants contend that the "professional services" exclusion in both policies relieve them of any obligation to defend or indemnify Plaintiff because it is undisputed that Plaintiff provided professional services on the project.[2]

Plaintiff asserts that the professional services exclusion clauses of the policies do not relieve Defendant of its duty to defend because it's role on the project was broader than simply providing professional services. Plaintiff contends that Defendants' owe it a duty to defend in light of both it's actual role in the project and the allegations made against it in the underlying litigation.

**1. The Professional Services Exclusions**

Each of the policies at issue has an exclusion for professional services. Traveler's CGL policy has two exclusion clauses for "*professional services*" which read:

EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS
PROFESSIONAL LIABILITY

This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

***Professional services include***:

---

[2] Indeed, Evanston Insurance Company is already providing a defense pursuant to Plaintiff's professional liability policy.

1. The preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

2. Supervisory, inspection, architectural or engineering activities.

EXCLUSION-CONTRACTORS

PROFESSIONAL LIABILITY

1. This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

2. Subject to paragraph 3. below, ***professional services include***:

a. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

b. Supervisory, inspection, architectural or engineering activities.

*3.* ***Professional services do not include*** services within <u>construction means, methods, techniques, sequences and procedures employed</u> by you in connection with your operations in your capacity as a construction contractor. (Emphasis added.)

Likewise, the umbrella policy also has exclusions for professional services. Travelers umbrella policy exclusion reads as follows:

EXCLUSION – PROFESSIONAL LIABILITY –
ENGINEERS, ARCHITECTS OR SURVEYORS

This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of ***professional services*** performed by or for you ***including***:

1. The preparing, approving, or failure to prepare or approve, maps; shop drawings; opinions; reports; surveys; change orders; designs or specifications.

2. Supervisory, inspection, or engineering services; or the failure to provide those services.

EXCLUSION - CONTRACTORS -
PROFESSIONAL LIABILITY

1. This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of the rendering or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

   a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

   b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

2. Subject to paragraph 3. below, ***professional services include***:

   a. The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   b. Supervisory or inspection activities *performed as part of any related architectural or engineering activities.*

*3.* ***Professional Services do not include*** services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor. (Emphasis added.)

To the extent Sirti's liability in the underlying litigation arises from its role as a provider of professional services to the project, coverage under both the CGL and Umbrella policies is excluded. However, because the Court concludes that Sirti's actual role in the project went beyond the provision of professional services, and because the allegations made against Sirti in the underlying litigation relate to Sirti's non-professional services, Defendants do have a duty to defend Sirti in the underlying litigation.

**2. Sirti's Role on the Project**

Plaintiff asserts it had two distinct roles on the project. The primary role required Sirti to provide professional design and engineering services including: conducting pre-design field surveys; preparing design maps; engineering drawings, and specifications; and, preparing or approving field orders and change orders. Sirti admits these services were performed in their capacity as professional engineers, requiring specialized education and training by people considered part of Sirti's professional staff. These services clearly constitute "professional services" as defined in all of the "professional services" exclusion clauses.

The second role on the project as construction manager was initiated in July 1998. The services provided in that capacity included: acting as Seren's liaison with many of the parties on the project; handling incoming paperwork from CCI and customer complaints as Seren's administrative assistant; preparing a safety manual for Seren; and, observing CCI's construction activities and reporting back to Seren. Sirti asserts that these duties were not performed in their capacity as professional engineer, because it employed individuals experienced in the means and methods of construction, as opposed to design. None of the construction management services required any specialized education or training in engineering. These duties were performed by Sirti's non-professional staff, and are not "professional services" as described in the professional services exclusions in the policies. Indeed, to the extent these services entailed the "construction means, methods, techniques, sequences and procedures" they are expressly defined in the policies to not be "professional services."

Furthermore, the language in the Umbrella Policy explicitly states that supervisory and inspection activities will only be considered "professional services" if they are performed as some

activity related to engineering. Therefore, any allegations brought in the underlying suits that concern the supervisory or inspection duties Sirti performed on the Project, unrelated to engineering, are included in the coverage by Travelers under the Umbrella Policy. Sirti asserts that the majority of allegations pending against them concern Sirti's role in providing non-professional services as a construction manager.

Travelers contends that the July 1998 agreement between Seren and Sirti was a clarification of the construction management duties Sirti was required to perform as part of their engineering duties. The job descriptions and proposed responsibilities of personnel preforming construction project management services shows Sirti proposed to provide supervisory functions which were designed to verify that contractors were testing, and installing the network per Sirti's specifications and design, and to evaluate the quality and quantity of the contractors performance. These duties were to be overseen by the Sirti engineering department because it was the integrity of the Sirti engineering plans and design of the cable that was being "managed" while other contractors performed the physical construction. Travelers also claims that these duties were part of the initial March 1998 contract for professional services because the Price Schedule for Sirti's "Post Engineering Construction Management Activities" did not increase following the July 1998 clarification of duties. This is an indication that there were no additional duties other than those related to professional services assigned.

In addition, the Sirti project manager overseeing the construction management, Tsoukalas, was hired by Sirti as a mechanical engineer, he is an engineer with design experience. He described his duties to include supervising, watching, and observing, indicating when items did not meet specifications, not training any other contractors employees. Specifically, Defendants argue that

Sirti's responsibility was limited to field engineering and inspections, both of which services are excluded from coverage under either policy. The Court rejects Defendants' arguments and concludes that the undisputed evidence establishes that Sirti had some responsibilities on the project which went beyond the provision of professional services, as that phrase is defined in the policies.

**3. Allegations in the Pending Suits**

To date twenty-four separate lawsuits have been filed relating to the project explosion. Sirti claims that it is the allegations alleged against them in the complaints that establishes Travelers' duty to defend in the pending lawsuits. For the sake of brevity and clarity, Sirti classified each of the 160 allegations contained in the complaints into 10 "types" for review by the court. The types of allegations against Sirti in the underlying lawsuits are as follows:

> (A) Sirti failed to adequately train CCI's workers, or to monitor, oversee or supervise CCI's cable installation work, or to fire CCI.;
>
> (B) Sirti failed to take precautionary measures to avoid damaging the gas line, including planning the excavation to avoid damage to the gas line, determining the precise location of the gas line without damaging it, maintaining a clearance between the anchor auger's cutting edge and the gas line sufficient to avoid damage to the gas line, supporting the gas line to protect it, and generally conducting the excavation in a careful and prudent manner;
>
> (C) Sirti failed to timely notify NSP or the authorities of the gas line rupture;
>
> (D) Sirti failed to warn, evacuate or otherwise protect people at risk of the gas line rupture;
>
> (E) Sirti failed to protect property from harm from the gas line rupture;
>
> (F) Sirti failed to maintain a safety plan, generally, or to comply with the requirements of the Workplace Accident and Injury Reduction Act (AWAIR), in particular;
>
> (G) Sirti failed to provide adequate management, staffing, and personnel to evaluate risks of harm posed by gas line ruptures;
>
> (H) Sirti failed to establish, implement, train and execute adequate procedures or plans to avoid a gas line rupture;

> (I) Sirti failed to establish and implement adequate procedures or plans for responding to a gas pipeline emergency such as a gas line rupture; and
>
> (J) Sirti was involved with CCI, Seren and NSP in a joint enterprise or joint venture concerning the installation of the cable system.

Sirti's Mem. in Supp. of Mot. for Part. Summ. J. at 16-23, (September 9, 2002).

The duty to defend under an insurance policy is broader than the duty to indemnify. Fireman's Fund Ins. Co. v. Hartford Fire Ins. Co., 73 F.3d 811, 816 (8th Cir.1996). Minnesota has established a difficult evidentiary burden which an insurance carrier must satisfy in order to avoid providing a defense to claims under its insurance policy. The Minnesota Supreme Court has explained that "[a] duty to defend an insured on a claim arises when any part of the claims is 'arguably' within the scope of the policy's coverage" and that "an insurer who wishes to escape that duty has the burden of showing that all parts of the cause of action fall clearly outside the scope of coverage. Jostens, Inc. v. Mission Ins. Co., 387 N.W.2d 161, 165-66 (Minn.1986)(citations omitted); Fluoroware, Inc. v. Chubb Group of Ins. Cos., 545 N.W.2d 678, 681 (Minn.Ct.App.1996) ("An insurer has an obligation to defend a claim against the insured when the claim falls 'arguably' within the coverage afforded by the policy"). Applying Minnesota law, the Eighth Circuit has further explained that "in determining whether there is a duty to defend, a court must give the benefit of the doubt to the insured" and that as a result, "unless the pleadings and facts clearly establish that the claim falls outside the policy terms, the duty to defend arises." John Deere Ins. v. Shamrock Indus., 929 F.2d 413, 418 (8th Cir. 1991)(citations omitted).

As described and summarized by Plaintiff, each of the ten types of allegations against Sirti implicate conduct for which there is a duty to defend. This Court concludes the undisputed evidence

regarding Sirti's actual role on the project, together with the allegations made against it in the underlying lawsuits establishes that Defendants owe Plaintiff a duty to defend.

**C. THE RECORD IS INSUFFICIENT TO DETERMINE WHETHER THERE IS A DUTY TO INDEMNIFY**

Defendants contend that because there is no duty to defend Sirti, there is no duty to indemnify it in connection with any judgment that might be entered against it in the underlying lawsuits. As the Court has concluded there is a duty to defend, there is no need at this time to decide whether there is a duty to indemnify. Indeed the record is insufficient to make any such determination.

It may happen that Sirti will be absolved of any responsibility at all for the events of December 11, 1998, in which case the question of indemnity will be moot. It may occur at the conclusion of all the underlying litigation, that the evidence will show that Sirti's only responsibility in connection with the explosion stems from its role as a provider of professional services, in which case the professional services exclusion may well relieve Defendants of any duty to indemnify. At this stage of the litigation, it is simply too early to tell whether there is or is not a duty to indemnify. See Reinsurance Assoc. of Minn. v. Timmer, 641 N.W.2d 302, 308 (Minn.Ct.App.2002)(the question of the duty to indemnify is not ripe and the Court must defer judgment until the decision in the underlying action is final.)

At this point, the record is simply insufficient for the Court to make a determination as a matter of law, whether there is or is not a duty to indemnify Plaintiff for any judgment that might be entered against it. To the extent Defendant seeks a determination that it has no duty to indemnify Plaintiff on account of the professional services exclusions in the policies, Defendants' request must

be denied. Put differently there are genuine issues of material fact regarding the nature, if any of the Plaintiff's liability to conclude that the professional services exclusions relieve Defendants of their duty to indemnify the Plaintiff.

## III. RECOMMENDATION

Based upon the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Partial Summary Judgment [#33] be **GRANTED**; and

2. Defendant's Cross Motion for Summary Judgment/ Declaratory Judgment [#'s 36, 42] be **DENIED**.

Dated: Aug 6, 2003

FRANKLIN L. NOEL
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, within ten days of this Report and Recommendation, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.