MARKEL

**Evanston Insurance Company**
SHAND MORAHAN PLAZA
EVANSTON, ILLINOIS 60201

Policy No. PJ800041
Prev. No. NEW
Prod. No. CN200

## DECLARATIONS - ARCHITECTS AND ENGINEERS PROFESSIONAL LIABILITY INSURANCE

Claims Made Policy: This policy is limited to liability for only those claims that are first made against the insured during the policy period. Please review the policy carefully.

1. NAMED INSURED: SIRTI LIMITED CORPORATION

2. ADDRESS OF THE INSURED:
5907-C HAMPTON OAKS PARKWAY
TAMPA, FL 36610

3. PERIOD: From May 15, 1998 To May 15, 1999
12:01 a.m. standard time at address of insured stated above.

4. OPTIONAL EXTENSION PERIOD: ~~From May 15, 1998 To May 15, 1999~~

5. NAME/DESCRIPTION OF PROJECT: ~~CABLE TV SYSTEM DESIGN~~

6. LIMIT OF LIABILITY:
The liability of the company for each claim under this policy shall not exceed $ 1,000,000

And, subject to that limit for each claim, the total limit of the company's liability for all claims during the policy period shall not exceed in the aggregate $ 1,000,000

7. DEDUCTIBLE: $ 5,000

8. PREMIUM: $ 5,000.00

SURPLUS LINES TAX 5% $ 250.00

9. ENDORSEMENTS ATTACHED:
1. Schedule 1 - Named Insured
2. Design Build Limitation
3. Prior Acts Exclusion Endorsement
4. Project Policy Endorsement
5. Year 2000 Exclusion

ALL CLAIMS TO BE REPORTED DIRECTLY TO

Shand Morahan & Company, Inc.
Shand Morahan Plaza
Evanston, Illinois 60201
(847) 866-2800

______________________
(Authorized Representative)

EXHIBIT 5

POLICY FORM: EIC 3089 3/96
EIC DEC 3089 3/96
Date Printed: August 5, 1998

**Evanston Insurance Company**
MARKEL EVANSTON, ILLINOIS

# Endorsement

**Named Insured:**
SIRTI LIMITED CORPORATION

Policy No.: PJ800041
Endorsement No.: 1
Effective Date: May 15, 1998

## SCHEDULE 1 - NAMED INSURED

The firm listed hereunder is Named Insured in accordance with Policy Definition III. Named Insured.

| FIRM NAME | PROFESSIONAL SERVICE |
|---|---|
| Sirti Limited Corporation | Cable TV Systems Design |

All other terms and conditions remain unchanged.

Authorized Representative

**Evanston Insurance Company**

MARKEL EVANSTON, ILLINOIS

# Endorsement

Named Insured:
SIRTI LIMITED CORPORATION

Policy No.: PJ800041
Endorsement No.: 2
Effective Date: May 15, 1998

## DESIGN BUILD LIMITATION

In consideration of the premium charged, it is understood and agreed that coverage for professional activity described in Item 4 of the Declarations is hereby limited to:

design, drawings, and specifications and technical supervision of own design but excluding any claim involving directly or indirectly construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with any project.

All other terms and conditions remain unchanged



Authorized Representative

MARKEL

**Evanston Insurance Company**

EVANSTON, ILLINOIS

# Endorsement

Named Insured:
SIRTI LIMITED CORPORATION

Policy No.: PJ800041
Endorsement No.: 3
Effective Date: May 15, 1998

## PRIOR ACTS EXCLUSION ENDORSEMENT

It is understood and agreed that coverage is not afforded hereunder in respect of any claim made against the Insured by reason of any liability arising out of any act, error or omission in rendering or failing to render professional services of the type described in the Declarations committed prior to May 15, 1998.

**All other terms and conditions remain unchanged.**

**EIC 1128 12/81**

**Authorized Representative**

**Evanston Insurance Company**
MARKEL EVANSTON, ILLINOIS

# Endorsement

| | | |
|---|---|---|
| Named Insured:<br>SIRTI LIMITED CORPORATION | Policy No.:<br>Endorsement No.:<br>Effective Date: | PJ800041<br>4<br>May 15, 1998 |

## PROJECT POLICY ENDORSEMENT

It is agreed that the total estimated premium for this policy shall be the amount shown below and shall be due at policy inception:

| | |
|---|---|
| Deposit Premium for the Policy Period: | $3,000.00 |
| Deposit Premium for the Optional Extension Period: | $2,000.00 |
| Total Deposit Premium: | $5,000.00 |

It is agreed that the total deposit premium shown above is a provisional premium and shall be subject to adjustment as explained below.

The total deposit premium of this policy shall be allocated to the following rating periods as shown below:

| Rating Period | Portion of the Deposit Premium Allocated to this Rating Period |
|---|---|
| **Policy Period** | |
| 5/15/98-99 | $3,000.00 |
| Total Estimated Deposit Premium for the Policy Period: | $3,000.00 |
| **Optional Extension Period** | |
| 5/15/99-00 | $2,000.00 |
| Total Estimated Premium for the Optional Extension Period: | $2,000.00 |

**Evanston Insurance Company**

MARKEL EVANSTON, ILLINOIS

# Endorsement

The deposit premium allocated to each rating period stated above shall be a deposit premium for that rating period. Upon the expiration of each rating period, the deposit premium for that rating period shall be fully earned.

At least 30 days prior to the expiration of each rating period shown above, the Named Insured shall submit to Shand Morahan & Co., Inc. information concerning changes in the scope of the project. Scope of the project shall mean: (a) billings, (b) construction values, (c) duration of the project or (d) professional services rendered by the Insured. Upon receipt of this information, Shand Morahan & Co., Inc. may revise the total premium due for this policy by revising the deposit premiums allocated to each subsequent rating period based upon changes in the scope of the project.

This revision shall be accomplished by endorsement to the policy showing the new deposit premiums as allocated to the subsequent rating periods and showing the additional premium due.

## AUTHORIZATION CLAUSE

It is further agreed that by acceptance of this policy, the first person or entity named in Item 1 of the Declarations agrees to act on behalf of all Insureds with respect to the giving and receiving of all notice as provided herein, including notice of cancellation of this policy, the payment of premiums and deductibles, and the receiving of any return premiums that may become due; and the insureds agree that such person or entity shall act on their behalf.

## OPTIONAL EXTENSION PERIOD

In consideration of the payment of the additional premium for the Optional Extension Period indicated on page 1 of this endorsement, it is agreed that upon expiration of the policy period, the coverage of this policy will be extended to apply to claims first made against the Insured during the twelve (12) months immediately following Mya 15, 1999, the expiration date of this policy. This twelve (12) month interval is referred to as the Optional Extension Period and in no event will the length of the Optional Extension Period be less than twelve (12) months. This Optional Extension Period shall apply only to claims which arise by reason of an act, error or omission in professional services committed prior to the expiration date of this policy and which are otherwise covered thereunder. Nothing contained herein shall in any way increase the limits of liability set forth in the Declarations of this policy.

**Evanston Insurance Company**

MARKEL EVANSTON, ILLINOIS

# Endorsement

## CANCELLATION

It is agreed that in the event of cancellation of this policy, the rules, states elsewhere in this policy, governing earned and return premiums shall apply only to the premium allocated to the rating period containing the cancellation date at the time of cancellation.

The premiums allocated to the subsequent rating periods, including any rating periods under the Optional Extension Period, shall be returned to the Named Insured. All coverage under this policy, including coverage under any portion of the Optional Extension Period remaining, shall cease as of the date of cancellation.



All other terms and conditions remain unchanged.

Authorized Representative

MARKEL

# Evanston Insurance Company

EVANSTON, ILLINOIS

## Endorsement

**Named Insured:**
SIRTI LIMITED CORPORATION

Policy No.: PJ800041
Endorsement No.: 5
Effective Date: May 15, 1998

**YEAR 2000 AND OTHER DATE-RELATED LIABILITY EXCLUSIONS**

This endorsement modifies the provisions of this policy.

It is agreed that:

A. **This policy does not apply to any Claim based upon or arising directly or indirectly out of:**

1. the inability to correctly recognize, process, sequence, distinguish, interpret or accept any date including but not limited to, the Year 2000 and beyond, due to the actual or alleged failure, malfunction or inadequacy of:

   a. computer **"software"** or computer **"hardware"**, whether belonging to any insured or to others, that is used by, maintained by, manufactured by or for, or made a component part of the product of the Insured; or

   b. any other products, services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph A.1.a. above;

2. any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement, supervision or other measures provided by any insured or on any insured's behalf to minimize or correct the failure or alleged failure herein referred to in Paragraph A.1. above including but not limited to reprogramming, assessment, auditing, correction, conversion, renovation, reprinting, replacement advising, consultation, designing, inspection, installation, maintaining, or repairing;

3. unlicenced or unauthorized use, modification, deletion, alteration, recompiling, reverse engineering, downloading, copying of software or infringement of any copyright, patent, trademark, service mark or trade name which occurs in connection with any activities to minimize or correct the failure or alleged failure herein referred to in Paragraph A.1. above; or

4. the Insured's failure to disclose, when required, Year 2000 information to government agencies and regulators or self regulating organizations.

MARKEL

**Evanston Insurance Company**
EVANSTON, ILLINOIS

# Endorsement

**B. As used in this endorsement:**

**"Software"** means computer software, including but not limited to, application software, computer programs, operating systems and related software, electronic interchanges and firmware.

**"Hardware"** means computer hardware, including but not limited to, computer processors, embedded chip circuitry, computer networks, electronic data interchanges and microchips.

**All other terms and conditions remain unchanged.**

EIC 4105 7/98

Authorized Representative

MARKEL

**Evanston Insurance Company**

EVANSTON, ILLINOIS

# Endorsement

| | |
|---|---|
| Named Insured:<br>SIRTI LIMITED CORPORATION | Policy No.: PJ800041<br>Endorsement No.: 6<br>Effective Date: May 15, 1998 |

## AMENDMENT OF DECLARATIONS

In consideration of the premium charged, it is agreed that Items 4. And 5. of the Declarations are amended to read as follows:

4. **OPTIONAL EXTENSION PERIOD:** From May 15, 1999 to May 15, 2000

5. **NAME/DESCRIPTION OF PROJECT:** HFC Network, St. Cloud, MN for Seren Innovations, Inc. - Phase I of Project

All other terms and conditions remain unchanged.

Authorized Representative

( (

**Evanston Insurance Company**

MARKEL EVANSTON, ILLINOIS

# Endorsement

| | | |
|---|---|---|
| Named Insured: SIRTI LIMITED CORPORATION | Policy No.: | PJ800041 |
| | Endorsement No.: | 7 |
| | Effective Date: | May 15, 1998 |

## AMENDATORY ENDORSEMENT

In consideration of the premium paid, it is understood and agreed that the following is added to endorsement #1, **SCHEDULE 1 - NAMED INSURED:**

| FIRM NAME | PROFESSIONAL SERVICE |
|---|---|
| Mike Melching | Physical Surveys |
| William Schilling | Head End Consulting |

All other terms and conditions remain unchanged.

Authorized Representative

( (

Shand Mc_nan

COONEY, RIKARD & CURTIN, INC.

POST OFFICE BOX 59689
BIRMINGHAM, AL 35259-9689
(205) 870-7790 • (800) 824-1709
FAX (205) 879-3739

-0778
-0798

Submitted by

Surplus Lines License No.

## APPLICATION FOR ARCHITECTS and ENGINEERS PROFESSIONAL LIABILITY POLICY (CLAIMS MADE COVERAGE)

### INSURANCE ON A SPECIFIC PROJECT

**APPLICANT INSTRUCTIONS:**

1. Please type or print in ink.
2. Answer all questions; leave no blank spaces.
3. If space provided is insufficient to answer any question fully, attach separate sheet.
4. This application must be signed and dated by an Owner, Partner or Officer.
5. Attach copy of your firm's brochure.

**NOTE:**

In applying for coverage, the Applicant agrees that in the event of covered losses, he will be required to be defended by the Company's appointed attorneys and that the deductible shall apply to loss and including (whether or not loss payment is made) adjusting expenses, investigation costs, and legal fees. If, however, the Applicant elects to handle a claim without notice to the Company or involving the Company's representatives, then no coverage for such claim is afforded the Applicant under the Policy.

1. Name of Applicant: Sirti Limited Corp.

2. Address: 5907-C Hampton Oaks Parkway (Street), Tampa (City), FL. (State), 33610 (Zip Code)

   Telephone Number (813) 623 6333

3. **PROJECT INFORMATION**

   (a) Name and/or Designation of Project: Seren Innovations HFC Broadband Network St. Cloud, Minnesota

   (b) Name of Project's Prime Professional, If Other Than Applicant: N/A

4. Location of Project: St. Cloud, Minnesota

5. Name and Address of Owner of Project: Seren Innovations Inc. 10 S 5th Street, Suite 840, Minneapolis, MN 55402

Name and Address of Client for whom the Applicant will provide Professional Services:

(If same as #5, so indicate.)

Seren Innovations, Inc.

Describe the Nature of Project:

Design HFC Network for St. Cloud and design Headend for Multimedia services.

Installation of Headend equipment

Project Management of Network Construction.

Indicate duration of Project by phase using dates:

| | START | COMPLETION |
|---|---|---|
| Schematic Design | May 1, 1998 | June 1, 1998 |
| Design Development | June 1, 1998 | September 1, 1998 |
| Construction Documents | June 1, 1998 | September 1, 1998 |
| Bidding or Negotiation | N/A | N/A |
| Construction | August 1, 1998 | March 1, 1999 |

Total Estimated Project Construction Value:

$ 500,000 Project Management plus 500,000 Engineering

Applicant's Total Estimated Project Billings (including billings paid to Applicant's Consultants):

$ 1,000,000

Indicate the percentage of the Applicant's Total Project Billings (including billings paid to Applicant's Consultants) for the following services (Total should be 100%.):

| | | | |
|---|---|---|---|
| Architecture | % | Soil Engineering | % |
| Civil Engineering | % | Structural Engineering | % |
| Electrical Engineering | % | Construction Management | 50 % |
| Mechanical Engineering | % | Others not shown, please specify below: | |
| Heating & Ventilation Engineering | % | Network Design | 25 % |
| Land Surveying | 25 % | | % |
| Landscape Architecture | % | | % |

(3)

12. **APPLICANT'S CONSULTANTS**

Please complete the following in regard to all of the Applicant's Consultants rendering services in connection with this project. A Consultant should be shown for each service listed in answer to Question #11 that is not performed by the Applicant.

| | NAME AND ADDRESS | TYPE OF SERVICE |
|---|---|---|
| A. | William Schilling | Headend System Integration |
| | 831 Sewickley St, Elwood City | |
| | PA. 16117 | |
| B. | Mike Melching | Surveys |
| | 2700 West College Ave. | |
| | Suite 284, Appleton, WI. | |
| C. | | |
| | | |
| | | |
| D. | | |
| | | |
| | | |

13. Equity Interest: After inquiry of each of the Applicant's Consultants, does the Applicant or any of the Applicant's Consultants, or any parent, subsidiary or otherwise related entity thereof retain an ownership interest in the proposed project? YES_____ NO X If yes, please attach details stating the full name of all parties having an ownership interest in the project and the percentage of ownership for each party.

14. After inquiry of each of the Applicant's Consultants, does the Applicant or any of the Applicant's Consultants or any parent, subsidiary or otherwise related entity thereof propose to engage in any actual construction, manufacturing or fabrication, or the supply of any materials to be used on the proposed project? YES_____ NO X If yes, give details.

15. Applicant's and Consultants' Professional Liability Insurance:

| FIRM | INSURANCE COMPANY | LIMIT | DEDUCTIBLE | EFFECTIVE DATE |
|---|---|---|---|---|
| Applicant | | | | |
| Consultant A | | | | |
| Consultant B | | | | |
| Consultant C | | | | |
| Consultant D | | | | |

6. After inquiry of each of the Applicant's Consultants, has any application for Professional Liability Insurance made on behalf of the Applicant or any of the Applicant's Consultants ever been declined or has any such insurance ever been cancelled or renewal refused? YES_____ NO X . If yes, please give details.

______

______

______

______

______

17. After inquiry of each of the Applicant's Consultants, has any claim ever been made against the Applicant or against any of the Applicant's Consultants? YES_____ NO X . If so, state briefly the cause and nature of the claim, including the amount involved and name of the project and the claimant, the date when the claim was made, the date the act giving rise to the claim was committed and the final disposition:

______

______

______

______

______

8. After inquiry of each of the Applicant's Consultants, is the Applicant or any of the Applicant's Consultants aware of any circumstances which may result in any claim under the proposed insurance? YES_____ NO X . If yes, please give full details on the same basis as Question #17. It is agreed that if there be knowledge of any such circumstance, any claim subsequently emanating therefrom shall be excluded from coverage under the proposed insurance.

______

______

______

______

______

9. Coverage requested:

Limit: 1,000.000

Deductible: 5,000

0. Effective date requested: May 1, 1998

1. Please attach a representative list for the Applicant and each of the Applicant's Consultants of projects similar to that proposed for this policy.

Detail:
1) Project name;
2) Services performed;
3) Construction value.

2. Attach a copy of the Applicant/Client Agreement and the Applicant/Consultant Agreements to be used for the project.

368 11/90

(5)

Insurance may be effective only upon payment of premium. Premium check or draft may be handled for collection in accordance with the practices of the collecting bank or banks and the insurance shall be void if the full amount of premium check or draft is not received by the Company.

I/We hereby declare that the above statements and particulars are true and that I/we have not omitted or suppressed or misstated any material facts and I/we agree that this application form shall be the basis of the contract and shall be deemed a part of the Policy as if annexed thereto and deemed a part thereof.

I/We further declare that I/we have made inquiries of the Consultants listed in Question #12 of this application with respect to all questions included in this application and that the answers given to these questions reflect also the answers given by such parties.

By owner, partner or officer (must be signed) [signature]

Date 5/13/98, 1998 Title Branch Manager

One signed copy will be attached to the Policy, cover note or Certificate, if issued. Signing this form does not bind the Company or the Applicant to effect insurance.

**Evanston Insurance Company**

EVANSTON, ILLINOIS

# ARCHITECTS AND ENGINEERS PROFESSIONAL LIABILITY POLICY INSURANCE FOR SPECIFIC PROJECT

**Insurer:**

**Evanston Insurance Company**

[A stock insurance company, herein called the Company, which except in Illinois is a non-admitted insurer, writing pursuant to the surplus lines laws and not under the jurisdiction of the Insurance Commissioner.]

## Claims Made Policy

This policy is limited to liability for only those CLAIMS THAT ARE FIRST MADE AGAINST THE NAMED INSURED DURING THE POLICY PERIOD OR DURING THE OPTIONAL EXTENSION PERIOD. Please review the policy carefully.

THIS POLICY CONTAINS PROVISIONS THAT REDUCE THE LIMITS OF LIABILITY STATED IN THE POLICY BY THE COST OF LEGAL DEFENSE AND PERMIT LEGAL DEFENSE COSTS TO BE APPLIED AGAINST THE DEDUCTIBLE.

# Notice

Except to such extent as may otherwise be provided herein, the coverage of this Policy is limited to liability for only those **CLAIMS THAT ARE FIRST MADE AGAINST THE NAMED INSURED WHILE THE POLICY IS IN FORCE OR DURING THE OPTIONAL EXTENSION PERIOD.**

Please review the Policy carefully and discuss the coverage thereunder with your insurance agent or broker.

**Evanston Insurance Company** (hereinafter called the Company) agrees with the Named Insured, in consideration of the payment of the premium, the undertaking of the Named Insured to pay the deductible as described herein and in the amount shown in the Declarations, in reliance upon the statements in the application made a part hereof, and subject to the limits of liability shown in the Declarations, and subject to all the terms of this insurance as follows:

# Insuring Agreements

I. **Coverage: Claims Made Provision.** The Company will pay on behalf of the Named Insured all sums in excess of the deductible amount stated in the Declarations which the Named Insured shall become legally obligated to pay as Damages by reason of any act, error or omission committed or alleged to have been committed by the Named Insured, or any person or organization for whom the Named Insured is legally liable, provided always that:

(a) Claim is first made against the Named Insured during the Policy Period or the Optional Extension Period by reason of such act, error or omission, and

(b) The Named Insured's legal liability arises out of the performance of professional services as described in Schedule 1 for the project described in the Declarations, and

(c) The Named Insured has no knowledge of such act, error or omission on or prior to the effective date of this Policy.

II. **Territory.** The insurance afforded applies worldwide.

III. **Limits of Liability.** The liability of the Company for the combined total of Damages and Claims Expenses for each Claim first made against the Named Insured during the Policy Period or the Optional Extension Period shall not exceed the amount stated in the Declarations for "each Claim", and subject to the limit of liability of the Company for each Claim, the total limit of liability of the Company for the combined total of Damages and Claims Expenses for all Claims first made against the Named Insured during the Policy Period or the Optional Extension Period shall not exceed the amount stated in the Declarations as "Aggregate."

The making of Claims or the bringing of suits by more than one person or organization, shall not operate to increase the limit of the Company's liability for each Claim and/or in the aggregate.

IV. **Deductible.** The deductible amount stated in the Declarations as "Deductible" shall be applicable to the combined total of Damages and Claims Expenses for each Claim. Such deductible amount shall not reduce the limits of liability of the Company. Deductible payments or portions thereof shall be paid by the Sole Agent within thirty (30) days of demand.

The determination by the Company as to the reasonableness of the Claims Expenses shall be conclusive on the Named Insured.

V. **Defense, Settlement, Cooperation.**

(a) The Company shall defend any Claim against the Named Insured seeking Damages to which this Policy applies, even if any of the allegations of the Claim are groundless, false or fraudulent and it is agreed that the Company may make such investigation and settlement of any Claim as it deems expedient, but the Company shall not be obligated to

pay any Damages or to defend or to continue to defend any Claim or to pay Claims Expenses after the applicable limit of the Liability of the Company has been exhausted by payment(s) of Damages and/or Claims Expenses.

(b) Selection of defense counsel shall be made by the Company; provided, however, if the Company is required by law to allow the Named Insured to select defense counsel, then the Named Insured shall make such selection from a list, provided by the Company, of independent attorneys or law firms who shall act solely on behalf of the Named Insured. The Named Insured agrees to direct such defense counsel to cooperate with the Company. Such cooperation shall include:

(1) Providing on a regular basis, but not less frequently than every six months, written reports on claimed Damages, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

(2) Providing fully itemized billing on a periodic basis;

(3) Providing any other information reasonably requested by the Company.

The fees and costs incurred by such counsel, including those fees and costs generated by cooperation with the Company, as set forth above, shall be included in Claims Expenses. Such Claims Expenses shall be included within the Policy limit of liability and not in addition thereto. Such Claims Expenses shall reduce the available limit of liability.

(c) The Company shall not settle any Claim without the consent of the Named Insured. If, however, the Named Insured shall refuse to consent to any settlement recommended by the Company and shall elect to contest the Claim or continue any legal proceedings in connection with such Claim, then the Liability of the Company for such Claim shall not exceed the sum of (1) the amount for which such Claim could have been so settled plus (2) Claims Expenses incurred up to the date of such refusal. Such amounts are subject to the provisions of paragraphs III and IV of the Insuring Agreements.

(d) The Named Insured shall not, with respect to any Claim covered under this Policy, except at the Named Insured's personal cost, make any payment, admit liability, settle Claims, assume any obligation, waive any rights or incur Claims Expenses without prior written Company approval. Any costs and expenses incurred by the Named Insured prior to the Named Insured giving written notice of the Claim to the Company shall be borne by the Named Insured and will not constitute satisfaction of the deductible either in whole or in part.

# Exclusions

The Insuring Agreements and all other provisions of this Policy shall not apply to:

I. Liability assumed by the Named Insured by agreement, whether written or oral, including, but not limited to, hold harmless and indemnity clauses, warranties, guarantees, certifications or penalty clauses, unless such liability arises from an error, omission or negligent act of the Insured and would have attached in the absence of such agreement.

II. Any Claim in any way based upon, involving or arising out of the conduct by an individual, corporation, business enterprise, partnership or joint venture of which a Named Insured is an owner, partner, officer, member, manager or employee, which is not designated in Item 1 of the Declarations as a Named Insured, unless specifically endorsed hereon.

III. Notwithstanding anything contained in this Policy to the contrary, the coverage herein shall not apply to a Claim made against a Named Insured:

(a) by a person, firm or organization (or its subrogee, assignee, contractor, subcontractor, subsidiary, affiliate or division) that wholly or partly owns, operates, manages or otherwise

controls a Named Insured, whether directly or indirectly, or that is wholly or partly owned, operated, managed or otherwise controlled by a Named Insured, whether directly or indirectly; or

(b) by a firm or organization (or its subrogee, assignee, contractor, subcontractor, subsidiary, affiliate or division) of which any principal, partner, director, officer or stockholder or employee of a Named Insured directly or indirectly maintains ownership, or who directly or indirectly operates, manages or otherwise controls such firm or organization; or

(c) by any person or entity identified as a Named Insured.

IV. Any Claim alleging bodily injury or Personal Injury to, or sickness, disease or death of any employee of a Named Insured arising out of and in the course of such employment, or any obligation for which a Named Insured or any carrier as a Named Insured's Insurer may be liable, under any Worker's Compensation, Unemployment Compensation, Employers Liability, Disability Benefits Law or under any similar law.

V. Any Claim in any way based upon, involving or arising out of the insolvency or bankruptcy of A Named Insured.

VI. Any Claim in any way based upon, involving or arising out of the advising or requiring of, or failure to advise or require, or failure to maintain any form and/or amount of insurance, suretyship or bond.

VII. Any Claim in any way based upon, involving or arising out of the ownership, rental, leasing, operation, maintenance, use or repair of any real or personal property, including damage to property at any time owned by, occupied by, or rented or leased to a Named Insured.

VIII. Any Claim in any way based upon, involving or arising out of the ownership, maintenance, operation or use, including loading and unloading, by, on behalf of, or at the direction of the Insured, of watercraft, automobiles, motor vehicles, aircraft, spacecraft or mobile vehicles of any kind.

IX. Any Claim in any way based upon, involving or arising out of express warranties or guarantees.

X. Any Claim in any way based upon, involving or arising out of any loss caused intentionally by or at the direction of a Named Insured; or any claim in any way based upon, involving or arising out of dishonest, fraudulent, criminal, malicious or knowingly wrongful acts, errors or omissions committed by or adjudicated to have been committed by or at the direction of a Named Insured; however, notwithstanding the foregoing the Company, subject to the Limits of Liability and other terms and conditions, will pay Claim Expenses for such Claim, and shall not exclude coverage to any other Named Insured who is not so adjudged to have committed such act as described above. This policy shall then only pay in excess of the Deductible on behalf of any such Named Insured who was not so adjudged to have committed such act, error or omission as described above.

XI. Any Claim alleging bodily injury or Personal Injury to, or sickness, disease or death of any person, based upon, involving or arising out of the actual, alleged or threatened discharge, dispersal, release or escape of Pollutants; or any Claim based upon, involving or arising out of any private, governmental or regulatory directive or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize Pollutants; however, this exclusion shall not apply when any such Claims result from the performance of professional services by the Named Insured in connection with the design of:

(a) treatment systems for domestic sewage, including those receiving industrial waste, but only if such industrial waste is pre-treated in accordance with applicable governmental or regulatory standards; or

(b) potable water systems; or

(c) storm water systems for runoff from rail, hail, snow or sleet.

# Definitions

I. **Policy Period.** "Policy Period" whenever used in this Policy shall mean the period from the inception date of this Policy to the Policy expiration date, as set forth in the Declarations or its earlier termination date, if any.

II. **Optional Extension Period** - "Optional Extension Period" whenever used in this Policy shall mean the period described in the Declarations as "Policy Period". The Optional Extension Period shall apply only to claims which arise by reason of an act, error or omission in professional services committed prior to the expiration date of the policy and which are otherwise covered thereunder. Nothing contained herein shall in any way increase the Limits of Liability set forth in the Declarations of this Policy.

III. **Named Insured.** "Named Insured" whenever used in this Policy shall mean each entity so designated in Schedule 1 and any present or former owner, partner, director, officer, or employee of each entity while acting in the course of those duties conducted for and on behalf of the Named Insured for the project described in Schedule 1; and/or the heirs, executors, administrators and legal representatives of such Named Insured, only while acting in their capacity as such, in the event of such Named Insured's incapacity, death, insolvency or bankruptcy, but only for Claims arising out of the duties conducted for an on behalf of the Named Insured in the performance of the professional services stated in Schedule 1.

IV. **Sole Agent Authorization Clause** - The first person or entity named in Schedule 1 of the Declarations agrees to act on behalf of all Named Insureds with respect to the giving and receiving of all notices as provided herein, including notice of cancellation of this Policy or the Optional Extension Period, the payment of premiums and Deductibles, and the receiving of any return premiums that may become due; and the Named Insureds agree that such person or entity shall act on their behalf. In the event the Sole Agent becomes unable to perform the duties outlined herein, the remaining project participants shall become jointly and severally responsible for such duties or they may designate a new Sole Agent.

V. **Claim.** "Claim" whenever used in this Policy shall mean a written demand received by the Insured for money or remedial professional services, including the service of suit or institution of arbitration or mediation proceedings against the Named Insured. A Claim is first made against the Insured at the earliest of the following:

(a) The first receipt by the Named Insured of notice of a Claim from a claimant, his legal representative or agent; or

(b) The first report by the Named Insured of a circumstance, act, error, or omission reasonably expected to give rise to a Claim, to any insurer regardless of whether such insurer affords coverage for such circumstance, act, error or omission or for any Claim relating to such circumstance, act, error or omission.

Any Claim relating to any circumstance referred to in answer to any question on the application for this insurance or any prior application for insurance shall be deemed to have been first made prior to the Policy Period, and therefore, shall not be subject to coverage hereunder.

VI. **Multiple Insureds, Claims and Claimants:** The inclusion herein of more than one Insured or the making of claims or the bringing of suits by more than one person or organization shall not operate to increase the Company's limit of liability. Two or more claims arising out of a single act, error, or omission or a series of related acts, errors or omissions shall be treated as a single claim. All such claims, whenever made, shall be considered first made on the date on which the earliest claim arising out of such acts, errors or omissions was first made, and all such claims shall be subject to the same limit of liability.

VII. **Claims Expenses.** "Claims Expenses" whenever used in this Policy shall mean (1) fees charged by any attorney designated by the Company (2) all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a Claim, if incurred by the Company, and

(3) fees charged by any attorney designated by the Named Insured with the written consent of the Company. However, "Claims Expenses" does not include salary charges of regular employees or officials of the Company or fees and expenses of independent adjusters, or any supervisory counsel retained by the Company.

IX. **Damages.** "Damages" whenever used in this Policy shall mean the monetary portion of any judgment, award, or settlement entered into with the prior written consent of the Company, but does not include:

(a) punitive or exemplary damages, any damages which are judicially or statutorily increased or multiplied, or fines, penalties, taxes or sanctions; or

(b) the restitution, return, withdrawal or reduction of fees, profits, charges for services rendered, consideration and/or expenses paid to the Named Insured for services or goods; or

(c) judgments, awards or settlements or portions thereof which are uninsurable under the law pursuant to which this Policy shall be construed.

X. **Personal Injury.** "Personal Injury" whenever used in this Policy shall mean bodily injury or emotional distress; or false arrest, detention or imprisonment, wrongful entry or eviction or other invasion of private occupancy, malicious prosecution or humiliation; or the publication or utterance of a libel or slander or other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; or discrimination.

XI. **Pollutants.** "Pollutants" whenever used in this Policy shall mean any solid, liquid, gaseous or thermal irritant or contaminant or hazardous substance or material including but not limited to radon, asbestos, lead, PCB's, Dioxin, mercury, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, including materials to be recycled, reconditioned or reclaimed.

# Conditions

I. **Named Insured's Duties in the Event of a Claim.** It is a condition precedent to the application of all insurance afforded herein that the Named Insured shall:

A. Give immediate written notice containing particulars sufficient to identify the NAMED Insured and claimant and full information with respect to the time, place and circumstances of the event complained of, and the names and addresses of the injured and of available witnesses, to the Company. The aforementioned written notice shall contain, at least, the following information:

(1) the injury and/or damage;

(2) the circumstance, act, error or omission of the Named Insured giving rise to such injury and/or damage;

(3) the name(s) of the person(s) and/or entity(ies) subject to such injury and/or damage; and

(4) the manner in which the Named Insured first became aware of (1), (2) and (c) above.

The Named Insured shall cooperate fully with the Company as set forth in Paragraph V of the INSURING AGREEMENTS, Defense, Settlement, Cooperation, and paragraph I of the CONDITIONS, Named Insured's Duties in the Event of a Claim, and any investigation conducted by the Company or its representatives shall be subject to the terms set forth in this policy as applicable to a Claim.

B. Immediately forward to the Company every demand, notice, summons or other process received by a Named Insured or its representative, if Claim is made against an Insured.

C. Cooperate with the Company and upon the Company's request, shall submit to examination and interrogation by a representative of the Company, under oath if required, and shall attend hearings, depositions and trials and shall assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits, as well as in the giving of a written statement or statements to the Company's representatives and meetings with such representatives for the purpose of investigation and/or defense, and all without charge to the Company.

D. Exercise any contractual right to either reject or demand the arbitration or mediation of any Claim made against the Named Insured in accordance with the instructions of the Company.

II. **Cancellations.** This Policy or the Optional Extension Period may be canceled by the Sole Agent by surrender thereof to the Company or to Shand, Morahan & Company, Inc., Shand Morahan Plaza, Evanston, Illinois 60201 or by mailing to the aforementioned written notice stating when thereafter such cancellation shall be effective. THE MAILING OF NOTICE AS AFORESAID SHALL BE SUFFICIENT NOTICE AND THE EFFECTIVE DATE OF CANCELLATION STATED IN THE NOTICE SHALL BECOME THE END OF THE POLICY PERIOD OR OPTIONAL EXTENSION PERIOD. If canceled by the Named Insured the Company shall retain the customary short rate proportion of the premium.

This Policy may be canceled by the Company or Shand, Morahan & Company, Inc., by mailing to the Sole Agent written notice stating when, not less than thirty (30) days thereafter such cancellation shall be effective. The Optional Extension Period, once effective, cannot be canceled by the Company except for non-payment of premium. However, if the Company cancels the Policy because the Sole Agent has failed to pay a premium when due, this Policy may be canceled by the Company by mailing a written notice of cancellation to the Sole Agent stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforementioned shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the Policy Period or the Optional Extension Period. Delivery of such written notice by the Sole Agent, the Company, or Shand, Morahan & Company, Inc. shall be equivalent to mailing.

If canceled by the Company, it may be canceled for one or more of the following reasons:

(a) Non-payment of premium (10 days notice);
(b) any violation of the terms and conditions of the Policy;
(c) the risk originally accepted has measurably increased;

1. an increase of 5% or more in construction values or gross billings and/or

2. duration of the project extends 6 months or more beyond original anticipated completion date;

(d) the Policy was obtained through material misrepresentation;

(e) loss of reinsurance.

Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. The check of the Company or any of its representatives, mailed or delivered, shall be sufficient tender of any refund due the Named Insured.

III. **Subrogation.** In the event of any Claim under this Policy, the Company shall be subrogated to all the Named Insured rights of recovery therefore against any person or organization and the Named Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Named Insured shall do nothing after loss to prejudice such rights.

IV. **Audit.** The Company may examine and audit the Named Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this Policy, as far as they relate to the subject matter of this Policy.

AT LEAST 30 DAYS PRIOR TO THE EXPIRATION OF EACH RATING PERIOD SHOWN IN THE PROJECT POLICY ENDORSEMENT, THE NAMED INSURED SHALL SUBMIT TO SHAND MORAHAN & COMPANY, INC. INFORMATION CONCERNING CHANGES IN THE SCOPE OF THE PROJECT. SCOPE OF THE PROJECT SHALL MEAN: (a) BILLINGS, (b) CONSTRUCTION VALUES, (c) DURATION OF THE PROJECT, OR (d) PROFESSIONAL SERVICES RENDERED BY THE NAMED INSURED. UPON RECEIPT OF THIS INFORMATION, SHAND MORAHAN & COMPANY, INC. MAY REVISE THE TOTAL PREMIUM DUE FOR THIS POLICY OR OPTIONAL EXTENSION PERIOD BY REVISING THE DEPOSIT PREMIUMS ALLOCATED TO EACH SUBSEQUENT RATING PERIOD BASED UPON CHANGES IN THE SCOPE OF THE PROJECT. THIS REVISION SHALL BE ACCOMPLISHED BY ENDORSEMENT TO THE POLICY SHOWING THE NEW DEPOSIT PREMIUMS AS ALLOCATED TO THE SUBSEQUENT RATING PERIODS AND SHOWING THE ADDITIONAL PREMIUM DUE.

V. **Action Against Company.** No action shall be maintained against the Company by the Insured to recover for any loss under this Policy unless as a condition precedent thereto, the Insured shall have fully complied with all the terms and conditions of this Policy, nor until the amount of such loss shall have been fixed or rendered certain either by final judgment against the Named Insured after trial of the issues and the time to appeal therefrom shall have expired without an appeal having been taken or, if an appeal shall have been taken, then until after the appeal has been determined, or by agreement between the parties with the written consent of the Company. In no event, shall any action be maintained against the Company by the Named Insured or any other persons unless brought within twelve months after the right of action accrued hereon. Nothing contained in this Policy shall give any person or organization any right to join the Company as a defendant or co-defendant or other party in any action against the Named Insured to determine the Named Insured's liability.

VI. **Other Insurance.** This insurance shall be primary coverage with respect to any other valid and collectible design professional liability policy solely with respect to the project designated in the Declarations. However, this insurance shall be excess insurance over any other valid and collectible insurance available to the Named Insured whether such other insurance is stated to be primary, contributing, excess, contingent or otherwise, unless such other insurance specifically applies as excess insurance over the Limits of Liability provided in this Policy.

VII. **Assignment.** This Policy shall be void if assigned or transferred without the prior written consent of the Company. However, if the Named Insured shall die or be adjudged incompetent this Policy shall cover the Named Insured's legal representatives as the Named Insured with respect to liability previously incurred and covered by this Policy.

VIII. **Application.** By acceptance of this Policy, all Named Insureds and any successor agree that the statements in the application are their agreements, representations and warranties, that they shall be deemed material and part of the Policy, and that this Policy is issued in reliance upon the truth thereof. This Policy embodies all agreements existing between the persons insured and the Company or any of its agents or representatives, relating to this Policy.

IX. **Discovery Clause.** If during the Policy Period the Named Insured first becomes aware of any injury and/or damage which has arisen from a circumstance, act, error or omission of the Named Insured as a result of which a Claim might reasonably be expected to be made for which insurance is otherwise provided by this Policy, and if during the Policy Period, the Company receives written notice from the Named Insured as described below, then any Claim subsequently made arising out of such injury and/or damage shall be considered to have been made on the date on which such written notice is received by the Company.

It is a condition precedent to the coverage afforded by this Discovery Clause that the aforementioned written notice shall contain the following information:

(a) the injury and/or damage;

(b) the circumstance, act, error or omission of the Named Insured giving rise to such injury and/or damage;

(c) the name(s) of the person(s) and/or entity(ies) subject to such injury and/or damage; and

(d) the manner in which the Named Insured first became aware of (a), (b) and (c) above.

X. **False or Fraudulent Claims.** If the Named Insured shall proffer any Claims knowing same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all insurance hereunder shall be forfeited.

XI. **Changes.** Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Company shall not effect a waiver or a change in any part of this Policy or estop the Company from asserting any right under the terms of the Policy, nor shall the terms of this Policy be waived or changed, except by endorsement issued to form a part of this Policy.

XII. **Conformity to Statute.** Terms of this Policy which are in conflict with any applicable statutes of the state wherein this Policy is issued are hereby amended to conform to such statutes.

XIII. **Notice of Claim.** The Named Insured, upon notice of any Claim shall give immediate written notice thereof, to Shand, Morahan & Company, Shand Morahan Plaza, Evanston, Illinois 60201.

XIV. **Service of Suit.** Except with respect to Policies issued for Named Insureds domiciled in Illinois, it is agreed that in the event of the failure of the Company hereon to pay any amount claimed to be due hereunder, the Company hereon, at the request of the Named Insured will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court. Nothing in this Clause constitutes nor should be understood to constitute a waiver of the Company's right to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court, as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon **WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, 150 East 42nd Street, New York, New York 10017-5639**, and that in any suit instituted against them upon this contract, the Company will abide by the final decision of such court or any appellate court in the event of an appeal.

The above named are authorized and directed to accept service of process on behalf of the Company in any such suit and/or upon the request of the Named Insured they will enter a general appearance upon the Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Company hereon hereby designates the Superintendent, Commissioner, or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney, upon whom may be served any lawful process in any action, suit or proceedings instituted by or on behalf of the Named Insured or any beneficiary hereunder arising out of this contact of insurance, and hereby designates the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

IN WITNESS WHEREOF, the Company has caused this Policy to be signed by its Secretary and its President and countersigned on the Declarations page by an authorized representative.

President

Secretary

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM)

This endorsement modifies the provisions of this policy.

It is agreed that:

1. **This policy does not apply:**

A. Under any Liability Coverage, to bodily injury or property damage

(1) with respect to which an Insured under this policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments Coverage, or any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

C. Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

(1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (b) has been discharged or dispersed therefrom;

(2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

(3) the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

2. **As used in this endorsement:**

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or by-product material;

"source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste.

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.