UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Seren Innovations, Incorporated,
Transcontinental Insurance Company,
and Continental Casualty Company,

Civ. No. 04–4978 (JMR/FLN)
Civ. No. 01–587 (JMR/FLN)

Plaintiffs,

vs.

The Travelers Indemnity Company of America, The Travelers Indemnity Company of Illinois, and Does 1–10,

Defendants,

and

Sirti Limited Corp.,

Plaintiff,

Jill K. Weber, Thomas Sandquist, et al.,

Intervenor Plaintiffs,

vs.

The Travelers Indemnity Company of America and The Travelers Indemnity Company of Illinois,

Defendants.

---

**DEFENDANTS THE TRAVELERS' MEMORANDUM OF LAW IN REPLY TO SIRTI AND INTERVENING PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

---

## INTRODUCTION

While initially brought as a Motion to Dismiss for failure to comply with Minn. Stat. § 555.11, this case should have more properly been brought as a Motion to Dismiss for

failure to join a necessary party under Rules 12(b)(7) and 19 of the Federal Rules of Civil Procedure and the federal declaratory judgment statute. In the event this Court determines that the case should not be dismissed due to Sirti's failure to join Evanston Insurance Company ("Evanston"), The Travelers Indemnity Company of America and The Travelers Indemnity Company of Illinois (hereinafter collectively referred to as "Travelers") request that the Court join Evanston as a party sua sponte. Alternatively, if the Court finds that Evanston is not a necessary party in whose absence complete relief can be accorded, Travelers moves this Court for an Order ruling (1) that Evanston had a duty to defend Sirti in the underlying action for allegations arising out of Sirti's rendition of professional services; (2) that defense fees are to be apportioned between Travelers and Evanston due to their mutual obligations to defend Sirti in the underlying action; and (3) evidence of the loan receipt agreement is admissible in the trial of this action to prove prejudice and bias, as well as for deduction from any eventual jury verdict in order to prevent Evanston from being unjustly enriched at the expense of Travelers.

## DISCUSSION

### I. The Failure To Join Evanston Requires Dismissal

Travelers seeks dismissal of Sirti's declaratory judgment action for its failure to join Evanston as a party to this litigation. Although the ability to maintain a declaratory judgment action due to the plaintiff's failure to comply with the requisites of Minn. Stat. § 555.11 has been questioned by at least one Minnesota District Court[1], the proper analysis for this procedural defect is clearly under federal procedural law. *See Carlson Holdings, Inc. v. Nafco Ins. Co., Ltd.*, 205 F.Supp.2d 1069 (D. Minn. 2001).

[1] *See American States Ins. Corp. v. Technical Surfacing, Inc.*, 178 F.R.D. 518, 519 at fn. 1 (Minn. 1998).

The federal declaratory judgment statute permits the Court to declare the rights and legal relations of Evanston as they are an interested party under 28 U.S.C. § 2201.[2] In fact, Rule 28 U.S.C. § 2201 anticipates that "**all persons who have an interest in the determination of the questions raised** in the declaratory judgment **should be before the court**" in order "to avoid a partial disposition of a controversy." *See Diamond Shamrock Corp. v. Lubermens Mut. Cas. Co.*, 416 F.2d 707, 710 (7th Cir. 1969) (Emphasis added). Dismissal of the action for failure to join Evanston should therefore be granted in order to avoid a partial disposition of this declaratory judgment action.

Dismissal is also appropriately sought under Rule 12(b)(7) which authorizes a motion to dismiss for failure to join a necessary party under Rule 19. *See* Rule 12(b)(7); *see also Manypenny v. U.S.*, 125 F.R.D. 497, 500 (D. Minn. 1989). Travelers affirmatively alleged in its Answer to the Complaint that the declaratory judgment action should be dismissed for failure to join necessary parties. (See Travelers Joint and Separate Answer at ¶ 14, dated April 3, 2001)

Rule 19 requires the court to determine whether it is necessary to have the absent party joined. *See T. deVries v. Weinstein International Corp.*, 80 F.R.D 452, 456 (D. Minn. 1978). Several interests that are relevant to Rule 19 controversies, including the defendants desire to avoid multiple litigation, inconsistent relief and sole responsibility for a liability shared with Evanston, are all present in this case. *Id.* Because (1) complete relief cannot be accorded to Travelers in Evanston's absence [Rule 19(a)(1)]; (2) Evanston claims an interest in the one million dollars it loaned Sirti

[2] There can be no dispute that Evanston is an interested party under 28 U.S.C. § 2201 since it has appeared with counsel in these proceedings and seeks a share of Sirti's recovery from Travelers pursuant to the terms of its Loan Receipt Agreement.

[Rule 19(a)(2)]; and (3) Travelers will be subject to incurring inconsistent obligations due to the need to commence a subsequent suit to determine the proper allocation of defense fees among primary insurers who both had a duty to defend Sirti in the underlying action [Rule 19(a)(2)(ii)], joinder of Evanston is necessary under Rule 19(a). *See* Fed. R. Civ. P. 19(a).

If a party is necessary under Rule 19(a) and joinder is feasible, they shall be joined. *See* Fed. R. Civ. P. 19(a). If joinder is not feasible, it must be determined if the Complaint should be dismissed or if the case should proceed with the parties before the court. *See* Fed. R. Civ. P. 19(b). Stated differently, "[i]f joinder is impeded by jurisdictional **<u>or other considerations</u>**" it must be determined if the action can proceed in the party's absence or whether the party is indispensable thereby requiring dismissal of the case. *See Scott Paper Co. v. National Casualty Co.*, 151 F.R.D. 577, 578 (E.D. Pa. 1993). (Emphasis added). In this case, it is arguably not feasible to join Evanston at this stage of the proceeding given the upcoming trial date thereby requiring dismissal of the action due to the fact that Evanston is indispensable party under Rule 19(b). Specifically, because the Court cannot properly allocate the defense or indemnity obligations owed to Sirti, complete relief cannot be accorded without the presence of the omitted Evanston.

## II. Evanston Is A Necessary Party That Must Be Joined Under Rules 19, 20 And 21 Of The Federal Rules Of Civil Procedure

If the Court finds that there is no basis for dismissal of the Complaint under Rule 19, but that Evanston is a necessary party, the Court shall Order joinder. *See* Fed. R. Civ. P. 19(a); *see also Progressive Casualty Ins. Co. v. Belmont Bancorp*, 199 F.R.D. 219, 225 (S.D. Ohio 2001) (recognizing that dismissal for failure to join is rarely the

remedy and that instead courts simply order joinder of the absent parties); *A & M. Gregos, Inc. v. Robertory*, 384 F.Supp. 187, 194 (E.D. Pa. 1974) (same). Although Travelers failed to timely move to join Evanston as a party to this action pursuant to the Court's November 24, 2004 Order,[3] "[w]hen one is so involved in an action as to be considered an 'indispensable' and necessary party to the litigation, yet … has not been made a party to the action, the court must sua sponte join that party to the lawsuit." *Merchants Nat. Bank of Winona v. Hartford Acc. & Indem. Co.*, 377 F.Supp. 1344, 1345 (D. Minn. 1974). "This issue can be properly raised at any stage in the proceeding." *CP National Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 911-12 (9th Cir. 1991). In fact, Rule 21 of the Federal Rules of Civil Procedure specifically states that "[p]arties may be dropped or added by order of the court on motion of any party *or of its own initiative at any stage of the action and on such terms as are just*. …" Fed. R. Civ. P. 21. (Emphasis added). In addition, Fed. R. Civ. P. 20 permits the court to "make such orders as will prevent a party from being embarrassed, delayed, or put to expense by the inclusion of a party against whom the party asserts no claim and who asserts no claim against the party, and may order separate trials *or make other orders to prevent delay or prejudice*." Fed. R. Civ. P. 20(b). (Emphasis added).

[3] Evanston was not joined by Travelers based on representations made to counsel for Travelers by Sirti's counsel in which Sirti indicated that the only damages for defense fees that Sirti would pursue was defense fees incurred solely by Sirti in the amount of $700,000. (See Supplemental Affidavit of Daniel A. Haws) It was represented to all counsel at a pretrial conference that Sirti did not "anticipate" an issue with Evanston pursuing reimbursement of its policy limits because the limits would be gone anyway. (Id.) It was not until the first settlement conference before Magistrate Judge Noel that counsel for Evanston appeared and demanded full reimbursement of the $1,000,000 policy limits it loaned to Sirti. (Id.) However, even at this settlement conference (as well as the second settlement conference), Evanston's counsel admitted she really was not up to speed on the file and had not reviewed it in detail. (Id.) In fact, before this first settlement conference, another attorney initially retained by Evanston advised they did not anticipate Evanston seeking reimbursement either. (Id.) It became clear for the first time during the settlement conferences that Evanston was a necessary party to the litigation. (Id.)

Moreover, in federal court, "Rule 19 must always be consulted to determine if all the necessary parties have been joined." *Polanco v. H.B. Fuller Company*, 941 F.Supp. 1512, 1520 (D. Minn. 1996). Section (a) of Rule 19 sets forth the criteria for determining when a party is necessary. Rule 19(a) provides:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest….

Fed.R.Civ.P. 19(a).

"Rule 19(a)(1) provides that an absent party is necessary to a suit when without that party 'complete relief cannot be accorded among those already parties.'" *Employers Ins. of Wausau v. Jostens, Inc.*, 181 F.R.D. 623, 624 (D. Minn. 1998). "Rule 19 serves to insure the presence of an 'essential core' of parties and issues, to avoid a multiplicity of suits." *Stark v. Independent School District #640*, 163 F.R.D. 557, 564 (D. Minn. 1995). "Rule 20 permits the Court to add parties but to avoid unduly complicating the proceeding." *Id*. "Rule 21 serves both functions." *Id*.

In order to satisfy the requirements of Rule 19-21,[4] this Court must Order the joinder of Evanston as it is a necessary party under Federal Rule of Civil Procedure

[4] Whether a person is necessary and should be joined is to be determined according to Federal Rules of Civil Procedure and not state law. *See Braniff Airways, Inc. v. Falkingham*, 20 F.R.D. 141, 143 (D. Minn. 1957). The *Braniff Airways, Inc.* holding that the subrogated insurer is not a necessary party does not apply in this case because Evanston is not subrogated to the rights of Sirti under Minnesota law by virtue of the loan receipt agreement. *See Jostens, Inc. v. Mission Ins. Co.*, 387 N.W.2d 161, 167 (Minn. 1986) (holding that insurer who loaned funds to insured pursuant to a loan receipt agreement is a lender and not a subrogee).

19(a) because (1) Evanston's joinder will not deprive the Court of diversity jurisdiction over the subject matter of the action; (2) complete relief cannot be accorded to those already parties to the litigation in the absence of Evanston; and (3) the parties will be faced with a multiplicity of lawsuits to determine the proper allocation of defense costs between Travelers and Evanston and potentially inconsistent obligations as a result if joinder is not permitted in this action.

Contrary to Sirti's allegations, joinder of Evanston will not deprive this Court of subject matter jurisdiction. Sirti is a Florida Corporation. (See Sirti's Compl. in Declaratory Judgment at ¶ 3, dated March 26, 2001) Both of the Travelers are Connecticut Corporations and Evanston is an Illinois Corporation. (See Supplemental Affidavit of Daniel A. Haws)

Since joinder of Evanston is feasible, it must be determined if Evanston is a necessary party to the declaratory judgment action under Rule 19(a) given its loan receipt agreement with Sirti and its request, through Sirti, for full reimbursement for defense fees from Travelers. Federal courts addressing this identical issue have found an insurer, like Evanston, to be a necessary party that is required to be joined to the declaratory judgment action pursuant to Rule 19.

To illustrate, in *American Dredging Company v. Federal Ins. Co.*, 309 F.Supp. 425 (S.D.N.Y. 1970), the plaintiff was hired to construct a pipeline crossing for Colonial Pipeline Company. *Id.* at 426. The S.S. Bristol did extensive damage to the pipeline when it fouled its anchor on an inbound trip to Philadelphia. *Id.* Under its contract with Colonial, the plaintiff was obligated to repair the damage. *Id.* Plaintiff was insured by London Underwriters for damage to the pipeline occurring during construction. *Id.* It

was also an additional insured under several policies of insurance issued to Colonial. *Id*. After attempting to repair the pipeline unsuccessfully, plaintiff advised Colonial that a new pipeline would have to be installed. *Id*. Colonial agreed, but its insurers claimed they did not assent to this proposal. *Id*. Plaintiff proceeded to install the new pipeline at an expense of nearly $500,000.00. *Id*. Its insurer, London, paid plaintiff the full amount of this claim under a loan receipt agreement. *Id*. As part of the agreement, plaintiff was required to institute suit against Colonial's insurers to recover the amount of its claimed damages at the expense of London with the understanding that plaintiff would pay to London any sum recovered from the defendant insurers in full satisfaction of the loan. *Id*. If plaintiff was unable to recover from Colonial's insurers, it was under no obligation to repay the loan. *Id*.

Plaintiff thereafter commenced suit against Colonial's insurers seeking the sum of $471,866.86, the exact amount advanced to it by London. *Id*. Defendants moved for summary judgment claiming that plaintiff was only entitled to contribution from the co-insurers and not complete reimbursement for the loss London paid. *Id*. at 426-27. The court agreed stating:

> London has no right to recover on defendant's policy of insurance as such. The only right which London has against the co-insurers is by way of pro rata contribution. Thus, unlike subrogation cases, the attempt is made here to confer on London a substantive right to which it is not entitled. Moreover, if plaintiff were able to recover from the defendant insurers for London's benefit the full amount paid it by London, the defendant insurers in turn would have the right to pro rata contribution from London on the amount paid out to plaintiff by them in satisfaction of the loss. But defendants cannot assert such a claim against London in this suit since London is not a party. Thus giving effect to the device employed here would give rise to multiplicity of litigation.

*Id*. at 428.

The court, in *American Dredging Company*, went on to say:

> [T]he loan device is sought to be used to confer on London a substantive claim for relief which it would not otherwise have. The claim on the policy, brought in the name of the plaintiff, is asserted for the benefit of but not in the name of London. It is thus sought to make London whole at the expense of the defendant insurers when London is entitled to contribution only. At the same time it would have the effect of depriving defendant insurers of the opportunity to assert their own claim for contribution against London in the same suit and compel them, if the recovery were had against them, to bring a separate action against London for contribution.

*Id*. at 429.

As a result of its concern over the potential for the multiplicity of litigation, the *American Dredging Company* court ordered that London be joined as a party plaintiff in order to resolve in one action the pro rata contribution required by all of plaintiff's insurers. *Id*.

More recently, the Fourth Circuit addressing this same issue came to an identical holding as did the court in *American Dredging Company*. *See Jacobs Press, Inc. v. The Hartford Steam Boiler Inspection & Insurance Company*, 107 F.3d 866, 1997 WL 90665 (4th Cir. 1997) (Unpublished opinion).[5] In *Jacobs Press, Inc.*, Jacobs operated a printing press facility that was damaged when its main printing press broke down and caught fire. *Id*. at **1. Jacobs' building, fixtures, machinery and equipment were insured by a commercial property policy issued by American. *Id*. Jacobs was also insured by a boiler and machinery policy issued by Hartford. *Id*. Both policies had "other insurance" clauses which required the insurers to share responsibility with regard to loss covered

[5] This unpublished opinion, attached hereto as Exhibit A, is being cited pursuant to 2006 US Order 7, Rule 28A(i) of the United States Court of Appeals, Eighth Circuit, as the opinion has persuasive value on a material issue and no published opinion of this or another court serves as well.

by other policies. *Id.* Jacobs made claims under both policies following the fire. *Id.* at **2.

Hartford denied coverage based on fire and water exclusions in its policy. *Id.* at **2 & 3. American accepted coverage under its policy and paid Jacobs $731,360.93 for the replacement cost of the press, $100,000 for expenses caused by the fire and $16,513.60 to install a new press for a total payment of $847,874.53. *Id.* at **2. With regard to the $731,360.93 property loss, American and Jacobs entered into a loan receipt agreement which characterized American's payment as a loan repayable only in the event of a recovery against Hartford by Jacobs. *Id.* As part of the loan receipt agreement, American agreed to pursue litigation against Hartford at its expense on behalf of Jacobs. *Id.*

In accordance with its agreement with American, Jacobs commenced suit against Hartford alleging breach of contract and bad faith. *Id.* at **3. Sixty days prior to trial, Hartford sought to join American as a party on the ground that Jacobs was, in effect, bringing suit for contribution on American's behalf. *Id.* The district court denied Hartford's motion ruling that the presence of American, a party subject to process and whose joinder would not affect its diversity jurisdiction, would contribute nothing to the resolution of the matter since Hartford was not at risk of paying twice since American agreed to be bound by the verdict. *Id.* at **4. The trial therefore proceeded against Hartford with Jacobs recovering nearly $1,450,000.00: $731,513.60 for property damage; $417,000 for business interruption loss; $200,000 for compensatory damages; and $100,000 in punitive damages. *Id.* at **1 & 3.

Following the jury's verdict, Hartford appealed claiming that the district court erred in failing to join American as a party plaintiff. *Id*. at **4. The issue on appeal was whether the district court erred in denying Hartford's request to join American as a party plaintiff either by its status as a real party in interest under Rule 17 or because it was a person needed for just adjudication pursuant to Rule 19. *Id*. at **5. The Fourth Circuit concluded that the district court erred and that American should have been joined as a party plaintiff under both Rules 17 and 19. *Id*.

The court reached this holding based on its recognition that "[i]f the jury's verdict stands and the full $730,000 passes from Hartford to Jacobs to American (as Jacobs has said will happen), Hartford will have paid more than one-half share of the co-insurance; it will have paid its own one-half and American's one-half as well." *Id*. at **8. In so ruling, the Court reasoned:

> Jacobs received proceeds from American, and, at American's expense, Jacobs agreed to institute suit against Hartford (actually against any co-insurer). Jacobs was obliged to turn over to American any recovery it might have against Hartford, but would have no liability to American in the event of no recovery. Although by reason of their "other insurance" clauses American and Hartford had mutual rights of contribution, Jacobs' suit against Hartford was an attempt (successful, as it turned out) to obtain full reimbursement for American. Subsequent litigation between insurers, in all likelihood involving the insured as well, was inevitable. Recognizing in the present transaction potential for a comparable 'multiplicity of litigation,' we concur in the result of *American Dredging*. Both as that portion of its payment covered by the loan receipt, and that part not covered by the loan receipt American is the real party in interest in this suit and should have been joined upon Hartford's motion.

*Id*. at **7.

Accordingly, the court held "that under Rule 19(a) complete relief between Hartford and Jacobs could not be accorded in American's absence." *Id*. at **9. "We further conclude, given American's obvious claim to at least a portion of payments found

due from Hartford and vice versa, that American's absence from the suit left Hartford subject to a substantial risk of incurring inconsistent obligations." *Id.* "Since American could feasibly have been joined, we hold that it should have been." *Id.*; *see also Employers Ins. of Wausau*, 181 F.R.D. at 624 & 627 (in declaratory judgment action commenced by CGL insurer against insured seeking declaration of noncoverage regarding the hazardous waste spills, court concluded that predecessor CGL insurer was a necessary party under Rule 19 as the predecessor insurer's absence may severely prejudice the insured's ability to obtain full relief).

Just like the absent insurers in *American Dredging Company* and *Jacobs Press, Inc.*, Evanston is a necessary party to this litigation and must be joined pursuant to Rule 19(a) of the Federal Rules of Civil Procedure. Specifically, absent joinder of Evanston complete relief cannot be accorded among the parties given that both Evanston and Travelers owed a duty to defend Sirti under their respective policies of insurance. (See Evanston's policy of insurance, attached as Exhibit 5 to the January 4, 2006 Affidavit of Daniel A. Haws) Specifically, Evanston's policy of insurance provided coverage for Sirti's rendition of professional services, claims specifically excluded by Travelers professional services exclusion. (Id.) Travelers, on the other hand, has been found to have a duty to defend claims against Sirti arising from its rendition of non-professional services. (Id.; see also Supplemental Affidavit of Daniel A. Haws) Absent joinder of Evanston to this action, there will be no judicial finding that it owed a duty to defend Sirti in the underlying action. Absent such a finding complete relief will not be accorded to the parties to this litigation. Specifically, absent Evanston's presence, Travelers will be found to have the sole duty to defend Sirti resulting in its payment of all defense fees,

more than its fair share, resulting in a windfall recovery to Evanston, a non-party, and a complete extinguishment of its own contractual obligation to defend and indemnify Sirti in the underlying action.

Such a result will necessarily result in a multiplicity of suits involving the same parties as Travelers will be forced to bring suit to determine the proper apportionment of defense fees between itself and Evanston. Under the terms of Evanston's insurance policy, which contains an other insurance clause, indicating that its policy is primary with respect to any other valid and collectible design professional liability policy and excess for any other insurance available whether such other insurance is stated to be primary, contributing, excess, contingent or otherwise, unless such other insurance specifically applies as excess insurance over the Limits of Liability in the Evanston policy, Evanston clearly had a duty to defend Sirti, as a primary insurer, for those claims relating to Sirti's rendition of professional services. (Id. at p. 7)

Not only does the other insurance clause in Evanston's policy apply and result in Evanston being the primary insurer for professional liability claims, but also under the terms of the loan receipt agreement, Evanston and Sirti agreed to commence suit against Travelers in order to force Travelers to "***share*** in the cost of defending Sirti." (See Exhibit 6 to the January 4, 2006 Affidavit of Daniel A. Haws) (Emphasis added). Despite the terms of the loan receipt agreement and the Other Insurance clause in the Evanston policy of insurance, Evanston is now seeking full reimbursement of its $1,000,000 policy limits "loaned" to Sirti claiming that Travelers owed the primary duty to defend. (Id. at ¶ 11) In order to resolve whether Evanston is entitled to complete reimbursement or simply a share of the defense costs from Travelers, Evanston must

be joined as a party plaintiff to this suit, in accordance with Rule 19(a), as has been previously recognized as the proper procedure to resolve allocation of defense costs by an insurer pursuant to a loan receipt agreement by the two other federal courts that have previously addressed this identical issue.

## III. If The Court Finds Evanston Is Not A Necessary Party It Must Nevertheless Determine That Evanston Owed A Duty To Defend Sirti In Order For A Proper Allocation Of Defense Fees To Be Made At Trial

In the event the Court denies Travelers request to join Evanston as a party to this action under the Federal Rules of Civil Procedure, Travelers alternatively seeks a declaration from this Court ruling that Evanston had a duty to defend Sirti for all claims arising out of Sirti's rendition of professional services on the St. Cloud gas explosion project, as well as a ruling apportioning defense costs between both primary insurers, Evanston and Travelers, in accordance with the long-standing substantive law in Minnesota. *See Jostens, Inc. v. Mission Ins. Co.*, 387 N.W.2d 161 (Minn. 1986).

In *Jostens*, the issue involved whether an insured, who defends itself and later settles its claim for defense costs with its underlying insurer, pursuant to a loan receipt agreement, may recover all of its defense costs from its umbrella insurer, when, at the time the defense was tendered, both insurers arguably had primary coverage. *Id.* at 162. The trial court ruled that the umbrella insurer was solely liable for the insured's defense costs. *Id.* On appeal, the court reversed, without reaching this issue, on the ground that the insured was not the real party in interest. *Id.* The Minnesota Supreme Court reversed both lower courts and remanded for apportionment of defense costs between the two insurers. *Id.*

The *Jostens* action arose out of a suit by Wepler, a former employee of Jostens, for wrongful termination. *Id*. Jostens had a CGL policy with Wausau and an umbrella policy with Mission. *Id*. Jostens tendered defense of the Wepler suit to both Jostens and Mission, both of whom denied coverage or a defense obligation. *Id*. at 163.

Jostens defended itself and ultimately settled the Wepler action for $35,000. *Id*. Jostens proceeded to file suit against both Mission and Wausau seeking reimbursement of its fees and expenses incurred in defending and settling the Wepler lawsuit. *Id*. Both Mission and Wausau again denied liability. *Id*. Jostens and Mission moved for summary judgment. *Id*. Before the motions were decided, Jostens and Wausau entered into a loan receipt agreement. *Id*. In exchange for a nearly $104,000 loan by Wausau, Jostens agreed to dismiss the action against Wausau and pursue, at Wausau's expense, Jostens' action against Mission. *Id*. Wausau and Jostens further agreed that any sums Jostens recovered from Mission would go to Wausau in repayment of the loan. *Id*.

The trial court ultimately granted Jostens' summary judgment motion and concluded that both Wausau and Mission owed a duty to defend the Wepler action. *Id*. at 164. Nonetheless, the trial court concluded that Mission alone was liable for the defense costs and the Wepler settlement reasoning that the loan receipt agreement sheltered Wausau from liability. *Id*. On appeal, the court reasoned that Jostens was not the real party in interest because it recovered all of its defense costs from Wausau under the loan receipt agreement. *Id*.

The Minnesota Supreme Court disagreed with the appellate court and concluded that Jostens was the real party in interest entitled to maintain suit in its name for the

Wepler defense costs against Mission as Jostens had paid its own way. *Id*. at 164-65. It also disagreed with the trial court and concluded that both Wausau and Mission were liable to Jostens for defense costs incurred in the Wepler action. *Id*. at 165. The Minnesota Supreme Court concluded that since both Wausau, the underlying insurer, and Mission, the umbrella insurer, arguably had primary coverage for the Wepler suit, both had a duty to defend. *Id*. at 167. The *Jostens* court reasoned:

> In our case here, neither insurer undertook the insured's defense. The insured defended itself. The fact that Wausau has now 'paid' Jostens' defense costs under a loan receipt agreement does not make Wausau like the insurers who actually incurred the defense costs in *Iowa National*[6]*, St. Paul School District*[7], and *Nordby*[8], nor does it put Wausau in Josten's shoes. Wausau is a lender, not a subrogee, and nothing more. To repeat, we look at the situation as it was for Jostens at the time it was confronted with Wepler's allegations. Viewed from this standpoint, it hardly seems fair Mission should now be responsible for the entire costs simply because Jostens has selected Mission [sic] rather than Wausau [sic] to pay them. Who should pay the insured's defense costs should not depend on the whim or caprice of the insured, when, at the time the defense was needed, both insurers arguably had a duty to defend.

*Id*. at 167.

Based on this reasoning, the Minnesota Supreme Court concluded that since both Mission and Wausau arguably had coverage at the time both rejected defense tenders, the insurers shall be equally liable for the insured's defense costs, except for when both an underlying and umbrella insurer are involved, and then the underlying

---

[6] *See Iowa National Ins. Co. v. Universal Underwriters Ins. Co.*, 276 Minn. 362, 365-68, 150 N.W.2d 233, 236-37 (1967) (holding that an insured cannot recover the costs of defense of a mutual insured from another insurer absent a contractual relationship between the insurers).

[7] *See St. Paul Sch. Dist. No. 625 v. Columbia Transit Corp.*, 321 N.W.2d 41, 48 (Minn. 1982) (holding that "[n]o contractual obligation exists to make one insurer accountable to the other for a breach of its independent obligation to the insured.").

[8] *See Nordby v. Atlantic Mutual Ins. Co.*, 329 N.W.2d 820 (Minn. 1983) (ruling that "[a]n insurer has no right of action against another insurer to recover the cost of defending the insured, since there is no contractual obligation between insurers.").

insurer shall be liable for the entire defense costs except for those the underlying insurer can show were for defending claims covered only under the broader umbrella policy. *Id.* Accordingly, the case was remanded to the trial court to determine apportionment of defense costs between Wausau and Mission. *Id.* at 168. The court ruled that "[i]f the defense costs for the two sets of claims are so inextricably intertwined they cannot be fairly sorted out, the costs may be equally divided." *Id.* The court reasoned that basic fairness dictates this result since both insurers were found obligated to provide a defense, "both should share equally in the expense for having to be told their responsibilities." *Id.*

Similarly, in *Home Ins. Co. v. National Union Fire Ins. Co.*, 658 N.W.2d 522 (Minn. 2003), Cargill defended itself in a patent infringement action at a cost of $3 million, even though it was insured by Home, Travelers and National Union, due to the insurers denial of coverage. *Id.* at 524-25. Home, Cargill's primary insurer, commenced a declaratory judgment action in which it was determined that Home had a duty to defend. *Id.* at 525. Home continued to deny its responsibility resulting in Cargill's suit to enforce the declaratory judgment. *Id.* Home commenced suit against National Union and Travelers seeking reimbursement of defense costs. *Id.* at 526. Following this suit, Home entered into a loan receipt agreement with Cargill, four years after being adjudged responsible for Cargill's defense costs, in which it pledged a $2,450,000 loan to Cargill and reserved a right to seek reimbursement for defense costs from Travelers and National Union. *Id.* at 525. After the loan receipt agreement was finalized, Cargill intervened in Home's suit against Travelers and National Union. *Id.* at 526.

The trial court's grant of summary judgment to Travelers and National Union on the ground that neither owed a defense to Cargill was reversed on appeal. *Id.* The Minnesota Supreme Court granted review and concluded that Home had standing to seek **contribution for a portion of defense costs** from National Union and Travelers due to the loan receipt agreement. *Id.* at 527 & 531. (Emphasis added). Specifically, the *Home* court ruled that "National Union is liable for defense costs associated with those claims on which its coverage is primary." *Id.* at 529-31. Significantly, the Minnesota Supreme Court, in *Home*, did not rule that National Union was obligated to reimburse Home for the entire $2,450,000 paid to Cargill pursuant to the loan receipt agreement. *Id.* Rather, National Union was only adjudged liable for those defense costs on which its policy was primary. *Id.* In other words, defense costs were to be apportioned among all insurers with a duty to defend so as not to eliminate the defense obligation by the insurer who "loaned" the insured defense costs. This holding is likely due to "Minnesota's express preference that each insurer fulfill its independent duty to cover a mutual insured." *See Andrew L. Youngquist, Inc. v. Cincinnati Ins. Co.*, 625 N.W.2d 178, 187 (Minn. Ct. App. 2001); *see also Wooddale Builders, Inc. v. Maryland Casualty Co.*, 695 N.W.2d 399, 406-07 (Minn. Ct. App. 2005) (apportioning defense costs between consecutively liable insurers), *rev. granted*, (Minn. July 19, 2005).

In this case, Evanston clearly understood that the law in Minnesota only permitted it to seek contribution from Travelers for a portion of defense costs based on the loan receipt agreement it entered into with Sirti. (See Exhibit 6 to January 4, 2006 Affidavit of Daniel A. Haws) It would be manifestly unfair to shift the entire burden of defending Sirti to Travelers when it is undisputed that Evanston was obligated to defend

Sirti for the claims arising out of Sirti's rendition of professional services. In order to permit the trier of fact to properly allocate defense fees between Evanston and Travelers, Evanston must be joined in this action.

**IV. Evidence Of The Loan Receipt Agreement Is Admissible At Trial**

In the event that defense costs are not apportioned among Evanston and Travelers in this action, Travelers requests an Order from the Court (1) ruling that evidence of the loan receipt agreement is admissible at trial; and (2) deducting from the verdict rendered in this action all "loans" advanced to Sirti by Evanston in order to prevent Evanston from being unjustly enriched at the expense of Travelers.

Evidence of a loan receipt agreement is admissible at trial to prove bias and prejudice. *See Riewe v. Arnesen*, 381 N.W.2d 448 (Minn. Ct. App. 1986). In *Riewe*, the court held that defendant "was entitled to establish the existence of the loan receipt agreements and to examine respondents for bias or prejudice resulting from those agreements." *Id*. at 454. "Similarly, he is entitled to elicit respondents' respective shares of the settlement as a means of establishing bias." *Id*.

Not only should evidence of the loan receipt agreement between Sirti and Evanston be admissible at trial for purposes of establishing bias or prejudice, but also the amount Sirti received from Evanston, pursuant to the loan receipt agreement, should be deducted from the jury's verdict in this case. The loan receipt agreement is arguably a deductible collateral source pursuant to Minn. Stat. § 548.36. Section 548.36 defines "collateral sources" to mean "**payments** related to the injury or disability in question **made to the plaintiff**, or on the plaintiff's behalf up to the date of the verdict,

by or pursuant to: * * * health, accident and sickness, or automobile insurance **or liability insurance** * * *." Minn. Stat. § 548.36, Subd. (2).

Although not reaching this holding the case of *Barlage v. The Place, Inc.*, 277 N.W.2d 193 (Minn. 1979), provides support for Travelers deduction argument. In *Barlage*, the plaintiff brought a dram shop action against The Place after his leg was amputated following a motorcycle accident between himself and drunk driver Grapper. *Id.* at 194. The Place commenced a third-party action against Grapper. *Id.* Grapper and Barlage had previously entered into a loan receipt agreement with Grapper for the maximum available under its policy. *Id.* Prior to trial, The Place dismissed with prejudice the third-party action against Grapper. *Id.*

During trial, The Place moved the Court to inform the jury that Grapper had previously settled with Barlage. *Id.* As a result of this settlement, the court initially ruled that it would deduct from the verdict the amount Barlage had received under the loan receipt agreement with Grapper. *Id.* The trial court, however, ultimately refused to deduct this amount from the verdict rendered against The Place. *Id.* at 195-96.

On appeal, the Minnesota Supreme Court held that due to its dismissal of Grapper with prejudice by The Place, it "is precluded from claiming contribution, and has no standing to complain that Barlage is obtaining a double recovery." *Id.* at 196. Significantly, the court recognized that The Place was seeking to escape the consequences of its voluntary dismissal of Grapper, who was obviously negligent, while having the benefit of the amount paid by him in settlement. *Id.* According to the Minnesota Supreme Court, "but for the actions of the nonsettling tortfeasor [in

voluntarily dismissing Grapper with prejudice], **the amount of settlement should have been deducted from the verdict** … ." *Id.* (Emphasis added).

Similarly, in *Pacific Indem. Co. v. Thompson-Yaeger, Inc.*, 258 N.W.2d 762 (Minn. 1977), the issue was whether payments made by two co-defendants to plaintiff pursuant to a loan receipt type agreement should operate as a pro tanto reduction of the total damage award. *Id.* at 764. Under the terms of the agreement, Tjernlund agreed to loan plaintiff $100,000 and Frerich agreed to loan plaintiff $140,000. *Id.* at 765. This was to be the maximum limit of each of their respective liability regardless of the actual jury verdict. *Id.* The agreement further stated that if the jury determined that neither was liable, the entire sum would be repaid by the plaintiff. *Id.* Moreover, if there was a finding of liability, the plaintiff would only retain the amount of money necessary to satisfy the verdict. *Id.*

The jury determined that Tjernlund was not negligent. *Id.* It found Frerichs only 10% at fault. *Id.* Pursuant to the agreements, the plaintiff was therefore required to return the entire $100,000 loan to Tjernlund and a substantial portion of the $140,000 loan to the Frerichs. *Id.* Nonetheless, the nonsettling defendant, Yale Engineering, sought to reduce the entire jury verdict by the $240,000 plaintiff received from Tjernlund and Frerichs. *Id.* The court recognized that if the plaintiff would have retained the entire $240,000, a pro tanto reduction would be appropriate. *Id.* However, given that the plaintiff was required to repay the loans, the court determined that a pro tanto reduction would be inequitable and would allow the defendants not a party to the agreement to profit by reducing the amount of their individual liability at the expense of the parties to the agreement. *Id.*; *but see Midway National Bank of St. Paul v. Estate of Bollmeier*,

504 N.W.2d 59 (Minn. Ct. App. 1993) (concluding that a settlement agreement between plaintiff and vicariously liable employers is not a collateral source that has to be deducted from the total jury verdict as the money was a loan to be paid back to the extent judgment was collected so as to prevent the possibility of double recovery).

In this case, the Court should deduct the "loan" paid by Evanston to Sirti from the jury verdict, not because Sirti would receive a double recovery, but because Evanston would be unjustly enriched by a return of its full policy proceeds even though it had an admitted duty to defend Sirti for the professional services claims asserted in the underlying action. A failure to deduct the one million dollar payment Sirti received from Evanston from the jury verdict will result in Evanston receiving a windfall and avoiding its contractual obligation to defend and indemnify Sirti and will necessarily result in Travelers being liable for more than its fair share of the defense costs. Such a result is inequitable and should not permitted by this Court.

## CONCLUSION

Travelers respectfully requests an Order from the Court dismissing the action for Sirti's failure to join Evanston, a necessary party to the action, pursuant to 28 U.S.C. § 2201 and Rules 12(b)(7) and 19 of the Federal Rules of Civil Procedure. In the alternative, Travelers requests that this Court join Evanston as a necessary party to this litigation pursuant to Rules 19-21 of the Federal Rules of Civil Procedure. Alternatively, Travelers seeks a Court Order determining (1) that Evanston had a duty to defend Sirti in the underlying action for claims arising out of its rendering of professional services; (2) apportioning defense obligations between Evanston and Sirti; (3) admitting evidence of the loan receipt agreement at trial to establish bias and prejudice, as well as for

deduction of the loan receipt proceeds from any jury verdict to prevent an unjust enrichment of Evanston at Travelers expense.

DATED: February 23, 2006

MURNANE BRANDT

s/Stacy E. Ertz
Daniel A. Haws #193501
Stacy E. Ertz #0267181
Attorneys for Defendants Travelers
30 East Seventh Street, Suite 3200
St. Paul, MN 55101
(651) 227-9411

690207